**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.  19-cv-00286-RM-NYW

BOLD IP PLLC, a Washington professional liability corporation,

       Plaintiff,

v.

BOLD LEGAL LLC, a Colorado limited liability company,

       Defendant.

---

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S RULE 12(b)(6) MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM

---

Defendant Opposes Plaintiff's Rule 12(b)(6) Motion to Dismiss Defendant's Counterclaim on the following grounds.

### Introduction

Defendant is entitled to seek cancellation or modification of Plaintiff's trademarks. Defendant pled a single counterclaim because each alternative theory reaches the same result: canceling or modifying Plaintiff's marks. The single counterclaim fits squarely within the Rules.

Defendant's particular grounds to challenge the marks are all well-recognized. First, one cannot register a mark that is in unlawful use. The marks were used by Plaintiff for legal services before Plaintiff's founder was even licensed to practice law. Second, one cannot receive trademark protection when they have not actually used the mark for the services listed on the application. Plaintiff did not use the marks for the services listed in the application. The remaining grounds Defendant asserts—fraud and mere descriptiveness—are also well-

recognized grounds to challenge the marks. All of Defendant's grounds supporting its counterclaim are well-pled. The Court should deny Plaintiff's motion.[1]

## Argument

### A. The legal framework

At the motion to dismiss phase, the Court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the" pleading party. *Casanova v. Ulibarri,* 595 F.3d 1120, 1124 (10th Cir. 2010). A counterclaim must "contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal,* 557 U.S. 662, 677 (2009). A counterclaim alleging fraud requires the pleading party to "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Lawrence Nat'l Bank v. Edmonds (In re Edmonds),* 924 F.2d 176, 180 (10th Cir. 1991).

The Court should deny Plaintiff's motion. First, Defendant properly pleads its request for relief as a single counterclaim. Second, Defendant plausibly pleads unlawful use as a valid, independent ground for cancellation. Third, Defendant plausibly pleads lack of use in commerce before the application filing date. Fourth, Defendant adequately pleads fraud on the USPTO. Fifth, Defendant plausibly pleads cancellation based on mere descriptiveness. Sixth, Defendant properly filed only one counterclaim that includes declaratory judgment relief. Finally, any dismissal should be without prejudice, with leave to amend.

---

[1] Plaintiff provides a lengthy conferral statement, suggesting that the sole purpose of the parties extending its deadline to file the Motion by two weeks was so that Defendant could amend its counterclaim. (Mot. at 1-2.) In reality, Plaintiff waited over four weeks after receiving the March 26 counterclaim to raise its "issues" on May 3, and it waited to raise those issues until two

### B. Defendant properly pleads its request for relief as a single counterclaim

Plaintiff takes issue with Defendant pleading a single counterclaim. (Mot. at 2.) Rule 8 provides that a "party may set out 2 or more statements of a claim . . . in a single count . . . ." Fed. R. Civ. P. 8(d)(2). Defendant pled a single counterclaim because each alternative theory reaches the same result. For instance, Defendant alleges Plaintiff's unlawful use of the marks for legal services before its founder was licensed. (Counterclaim ¶¶ 16-23, 28-34.) And Defendant alleges Plaintiff failed to use the marks for all the legal services listed in the application. (*Id.* ¶¶ 10-12, 24-25, 29, 38.) In either situation, the outcome is the same: cancellation. Further confirming the appropriateness of a single counterclaim is that the marks—both related—are subject to the same types of grounds for cancellation. (*Id.* ¶¶ 10-12, 16-39.) Rule 8(d)(2) also recognizes that a counterclaim can include "Alternative Statements of a Claim . . . ." *Id.* It makes sense that Defendant would include the alternative grounds to cancel or modify the marks in the same counterclaim. Last, while Plaintiff broadly asks the Court to dismiss the counterclaim in its entirety, Plaintiff overlooks that the "pleading is sufficient if **any** one [of the alternative statements] . . . is sufficient." *Id.* The only way for Plaintiff to prevail is to establish that none of the alternative grounds to cancel or modify the marks state a claim for relief. Plaintiff cannot overcome that hurdle. Defendant properly pled its counterclaim in all respects.

### C. Defendant plausibly pleads unlawful use as a valid, independent ground for cancellation

Plaintiff incorrectly claims that unlawful use of the marks is not an independent ground to cancel. (Mot. at. 5-6.) A fundamental pre-requisite to federal trademark registration is lawful use.

---

business days before the motion to dismiss deadline. Defendant agreed to the two-week extension so it had adequate time to assess the conferral issues.

"To qualify for federal registration, the use of a mark in commerce also must be lawful."
*Nationstar Mortg. LLC v. Ahmad*, 112 U.S.P.Q.2d 1361 (T.T.A.B. 2014). The statutory
requirements expressly include that the applicant must show the "mark is in use in commerce."
15 U.S.C.A. § 1051(a)(2). "[C]ommerce" means "all commerce which may lawfully be regulated
by Congress." 15 U.S.C.A. § 1127(1)(B); *see also The Clorox. Co. v. Armour-Dial, Inc.*, 214
U.S.P.Q. 850, 851 (TTAB 1982) ("'use in commerce' means a 'lawful use in commerce'") "Use
in commerce" also "means the bona fide use of a mark in the ordinary course of trade . . . ." 15
U.S.C.A. § 1127. Accordingly, trademark protection requires the applicant to demonstrate lawful
commercial use or the mark is subject to cancellation. *In re JJ206, LLC*, 120 USPQ2d 1568,
1569 (TTAB 2016).

Prohibiting registration of marks based on unlawful use protects the integrity of
trademarks. "[T]o hold otherwise . . . put[s] the government in the anomalous position of
extending the benefits of trademark protection to a seller based upon actions the seller took in
violation of that government's own laws." *CreAgri, Inc. v. USANA Health Scis., Inc*., 474 F.3d
626, 630 (9th Cir. 2007). Further, "as a policy matter, to give trademark priority to a seller who
rushes to market without taking care to carefully comply with the relevant regulations . . .
reward[s] the hasty at the expense of the diligent*." CreAgri*, 474 F.3d at 630. The Tenth Circuit
likewise recognizes that lawful use in commerce is a prerequisite to establishing trademark
protection. *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1225 (10th Cir.
2000) (discussing the "well-reasoned proposition that shipping goods in violation of federal law
cannot qualify as the use in commerce necessary to establish trademark rights").

Next, Plaintiff claims that Defendant has not plausibly pled allegations to support its unlawful use theory. (Mot. at 6.) But Defendant has alleged that the unlawful use originates from Plaintiff basing its commercial use of the marks on the unauthorized practice of law. (Counterclaim ¶¶ 16-23, 28-34.)  The alleged conduct is necessarily unlawful and goes to the heart of the use Plaintiff relied upon in its applications. *Id.* In *Nationstar Mortgage*, the trademark applicant was an unlicensed mortgage broker. 112 U.S.P.Q.2d 1361. The TTAB cancelled the mark because "the record establishes that applicant could not lawfully hold himself out as a mortgage broker, insurance broker, or real estate broker because he was not properly licensed at the time he filed the application." *Id.* Accordingly, the applicant was not using the "mark in commerce for the identified services as of the filing date of the application and that his representations in the application to the contrary were false." *Id.* The same rational applies here for cancelling Plaintiff's marks where the stated commercial use in the application was based on Plaintiff's founder offering legal services without a license. (Counterclaim ¶¶ 16-23, 28-34.)

Plaintiff also contends that Defendant has not plausibly pled unlawful use because Defendant has not identified the exact law Plaintiff violated. (Mot. at 6.) First, Plaintiff reads the statute too narrowly by presupposing that the only way to show unlawful use is a violation of an exact law. Establishing unlawful use comes in multiple forms: violating a regulation, statute, law, or any other improper conduct that rises to the level that the government should not reward the behavior with government-sanctioned trademark protection. *McCarthy on Trademarks* § 31:48 (2008) (characterizing the "lawful use" requirement as a "new category of unclean hands defense"). Second, meeting the plausibility requirement does not require Defendant to identify every conceivable regulation, statute, and law that one breaks through the unauthorized practice

of law. Defendant has provided more than enough allegations for the Court to draw reasonable inferences about the multiple laws that were broken through the unauthorized practice of law in Washington state alone. *See, e.g.,* RCW 2.48.180 "Definitions—Unlawful practice a crime— Cause for discipline—Unprofessional conduct . . . ." This is also not the case where the unlawful activity involves some esoteric set of laws or where the connection between unlawful activity and trademark application is collateral. *Compare S. California Darts Ass'n v. Zaffina*, 762 F.3d 921, 931-32 (9th Cir. 2014) (holding the alleged failure to pay corporate taxes was "misconduct . . . . unrelated to the purpose of the federal trademark laws . . ."). Instead, the alleged unauthorized practice of law was a clear legal, ethical, and professional violation in jurisdictions throughout the United States, and was central to the trademark applications. *See, e.g.,* Washington Rules of Professional Conduct 5.5 "Unauthorized Practice of Law"; *Advocates for Responsible Dev. v. W. Washington Growth Mgmt. Hearings Bd*., 230 P.3d 608, 611 (Wash. Ct. App. 2010) (holding "[t]he unlawful practice of law [is] . . . a gross misdemeanor"); *People v. Shell*, 148 P.3d 162, 170 (Colo. 2006).Similarly, marketing and advertising oneself to the public as an attorney when it fact you are not licensed violates multiple federal law too. *See, e.g,.* 15 U.S.C.A. § 1125 "False Designations of Origin . . ."; 15 U.S.C.A. §54 "False advertisements."[2]

---

[2] Courts recognize that the unlawful use theory can apply both to the laws of the United States and state laws. *S. California Darts Ass'*n, 762 F.3d at 931 (analyzing whether applicant's failure to incorporate under California law was sufficient to establish unlawful use). Further, "commerce" under the trademark statute has also been defined broadly to mean "all commerce which **may** lawfully be regulated by Congress." 15 U.S.C.A. § 1127(1)(B) (bolding added). There is no reason why unlawful conduct—like that alleged here—should not be a grounds to cancel, regardless of whether Congress presently regulates the conduct or may regulate it. Nor is it logical to construe the trademark statute to reward inequitable conduct, regardless of whether it was a state or federal law that has been violated. *See Erva Pharmaceuticals, Inc. v. American Cyanamid Co.,* 755 F. Supp. 36, 39 n. 1 (D.P.R. 1991) ("The requirement that a party make lawful use of its mark evolved from the common law doctrine of unclean hands.").

Defendant has provided more than sufficient allegations for the Court to conclude its unlawful use theory is plausible.

Plaintiff further contends that there is no unauthorized practice of law because practitioners before the USPTO are federally licensed. (Mot. at 6 n. 1.) First, Plaintiff—at the motion to dismiss phase—improperly inserts its own unverified allegations outside of the pleadings to overcome Defendant's counterclaim. The Court should reject this improper argument outright. Fed. R. Civ. P. 12(b)(6) (limiting analysis to the pleadings).

Second, merely obtaining licensure with the USPTO—even if that were the case—does not empower one to practice law without a state license as well, especially when the practice goes beyond patent matters. *Advocates for Responsible Dev.*, 230 P.3d at 611 (holding "only active members of the Washington State Bar Association may practice law"). In particular, here, Plaintiff attested that before its founder was licensed it practiced in Washington "intellectual property law . . . general business law . . ." and "trademark law, copyright law, [and] trade secret law." (Counterclaim ¶¶ 10, 12, 20, 21.) These acts—going well beyond patent prosecution— constitute the unauthorized practice of law regardless of whether a representative of Plaintiff was licensed to practice before the USPTO in patent matters.

In sum, Defendant asserts a recognized theory for cancellation based on unlawful use.

### D. Defendant plausibly pleads lack of use in commerce before filing

Plaintiff claims that Defendant has not pled lack of use in commerce as a ground to cancel. (Mot. at 6-7.) Defendant has included multiple allegations that support this ground to cancel or modify—both based on lack of lawful use and lack of any use. Use-based trademark applications—like here—are subject to cancellation if the applicant did not use the mark for the

services listed in the trademark application at the time the application was filed. *Gen. Healthcare Ltd. v. Qashat*, 364 F.3d 332, 337 (1st Cir. 2004) ("The public purpose underlying trademark protection is the preservation of good will associated with the mark, and public awareness is obviously a requisite of good will."). To begin with, Defendant alleged that Plaintiff's uses pre-application were not lawful uses. (Counterclaim ¶¶ 16-23, 28-34.) Unlawful use by its very nature does not constitute the type of use necessary to qualify for trademark registration. (Supra at 3-7.) Defendant has therefore plausibly pled lack of commercial use based on this set of allegations alone—allegations that are sufficient to cancel the marks in their entirety.

Separately, Defendant alleges that Plaintiff did not use the marks for all the purposes listed in the applications even if some of the services were actually in lawful use. Defendant alleges that the applications "represent broadly the description of services for the marks as 'Legal services' . . . . ." (Counterclaim ¶ 24.) Those broad legal services stated in the applications included services like "trademark law, copyright law, trade secret law . . . ." (*Id.* ¶ 10.) Defendant further alleges that in reality "any 'Legal services' used with the marks was for limited intellectual property services rather than general legal services." (*Id.* ¶ 25.) These allegations— taken as true—form the basis to cancel or modify the marks based on the actual uses that were much narrower than those listed by Plaintiff when obtaining the trademarks. (*Id.* ¶ 29.)

### E.  Defendant adequately pleads fraud on the USPTO

Plaintiff incorrectly claims that Defendant did not meet the pleading standard for alleging fraud. (Mot. at 7-10.) Fraud in procuring a trademark registration occurs when an applicant knowingly makes false, material representations of fact in connection with its application, with the intent to deceive the USPTO. *Swiss Watch Int'l Inc. v. Fed'n of the Swiss Watch Indus.*, 101

USPQ2d 1731, 1745 (TTAB 2012). "The applicant's statements are a fundamental statutory precondition to the issuance of a registration covering such goods and services and are relied upon by the USPTO's examining attorney in approving a use-based application for publication." *Nationstar Mortg*., 112 U.S.P.Q.2d 1361. Defendant has met the pleading standard.

Plaintiff's argument hinges on the belief that Defendant must identify affirmative fraudulent statements made to the USPTO. (Mot. at 7-8.) Plaintiff overlooks that the fraud largely stems from the "concealment to the USPTO" that that marks were in fact not in lawful use in commerce. (Counterclaim ¶ 30.) Concealment by its very definition means that Plaintiff would not have made statements to the USPTO. The opposite occurred. As Defendant alleged, Plaintiff's founder was not licensed to practice law until October 24, 2014, but used the marks for legal services for years before then. (*See, e.g., Id.* at ¶ 10 "Trademark Reg. No. 4793287 recites a date of first use in commerce as of April 29, 2014 . . ."; ¶ 12 "Trademark Reg. No. 5248705 recites a date of first use in commerce 'at least as early as' April 16, 2014 . . ."; ¶¶ 20-21 Plaintiff's founder "was not admitted to practice law in Washington state until October 24, 2014 . . . [m]eanwhile, months before admission to the Washington Bar, [the founder] represented the types of legal work Bold IP performed in Washington . . ."). Plaintiff's fraud is that it concealed from the USPTO that the marks were used for legal services for years while Plaintiff's founder was an unlicensed attorney. (*See, e.g.,*. Counterclaim ¶¶ 11, 12, 21.) Defendant also alleged that the concealed facts in the "applications . . . matured into the registrations for Trademark Reg. Nos. 4793287 and 5248702" and the "USPTO" relied upon these applications that contained omissions when granting the trademark registrations. (*Id.* at ¶ 34.) Defendant has met its obligations to allege fraud by concealment where it identified in its

pleading the who (Plaintiff), the what and the how (concealed facts from the USPTO of unlawful use through the unauthorized practice of law), where (in the trademark applications), and the when (upon filing the applications). *Lawrence Nat'l Bank,* 924 F.2d at 180 (listing the requirements for alleging fraud).

Defendant separately met the fraud pleading standard by identifying affirmative, fraudulent statements to the USPTO regarding the commercial use. Plaintiff represented in its applications that the marks were in commercial use before filing the applications. (Counterclaim ¶¶ 10, 12, 34.) But the marks were not "in lawful use in commerce before, at the earliest, October 24, 2014"—when Plaintiff's founder was finally admitted to practice law. (*Id.* at ¶ 23.) Accordingly, the statements contained in the trademark applications about the uses are false because, as discussed above, commercial use requires lawful use and the marks were not in lawful use at the times represented in the applications. Defendant further alleged that the false statements about commercial use in the "applications . . . matured into the registrations for Trademark Reg. Nos. 4793287 and 5248702" and the "USPTO" relied upon these applications containing affirmative false statements when granting the trademark registrations. (Counterclaim ¶ 34.) Defendant has met its obligations to allege fraud by affirmative misrepresentation when pleading the who, what, where, when and, how of the material misrepresentation or omission committed before the USPTO.

There is also another category of fraudulent statements identified by Defendant that are separate from Defendant's unlawful use theory. Defendant alleged that Plaintiff misrepresented the scope of use even if the uses were lawful. Those allegations included that the applications "represent broadly the description of services for the marks as 'Legal services' . . . . ."

(Counterclaim ¶ 24.) Those broad legal services stated in the applications included services like "trademark law, copyright law, trade secret law . . . . ." (*Id.* ¶ 10.) Defendant further alleges that in reality "any 'Legal services' used with the marks was for limited intellectual property services rather than general legal services." (*Id.* ¶ 25.) These allegations—taken as true—are separate examples of Plaintiff making false statements to the USPTO by overstating the amount of actual commercial uses for the marks. Again, Defendant has met its obligations to allege fraud by affirmative misrepresentation when pleading the who, what, where, when and, how of the material misrepresentation or omission committed before the USPTO.

Plaintiff also incorrectly claims that Defendant did not adequately allege that the false statements or concealment were material. (Mot. at 9.) Plaintiff cites to cases where courts found it was immaterial that the applicant misstated the date of first use of the mark "so long as the actual date of initial use predated the application." (*Id.* (citing *Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. DE C.V.*, 69 F. Supp. 3d 175, 226 (D.D.C. 2014).) Defendant's fraud theories are not based on whether Plaintiff misstated its first use date. Instead, the fraud theories are based on concealing or misrepresenting that Plaintiff applied for trademarks while concealing that the use was based on the unauthorized practice of law and relevant services did not predate the applications. Such facts go to the heart of Plaintiff's applications and are material to whether to grant trademark protection. *See, e.g., Nationstar Mortg.*, 112 U.S.P.Q.2d 1361 (stating "[a]pplicant's statements (and specimens) regarding his use of the NATIONSTAR mark for the identified services as of the application's filing date certainly were material"); *see also Stream, Inc. v. Superior Disc.*, LLC, CV 17-8177, 2019 WL 2124887, at *4 (E.D. La. May 15, 2019) ("Whether goods or services are in 'lawful use' in U.S. commerce is a material element of

a trademark application."). And for Defendant's last category of fraudulent statements—overstating the types of legal services used for the marks—such misstatements are also material. An applicant is only entitled to protection for services that it actually used the marks for at the time of the application. *Nationstar Mortg.*, 112 U.S.P.Q.2d 1361.

Finally, Plaintiff claims that Defendant fails to adequately plead fraudulent intent. (Mot. at 10.) Defendant has no such obligation. Rule 9(b) is clear that "intent, knowledge, and other conditions of a person's mind may be generally alleged." Defendant alleged that "Bold IP knew the fraudulent statements were false when making them to the USPTO [, and] [t]he fraudulent statements or concealment were intended to induce the USPTO to grant federal trademark protection for the marks." (Counterclaim ¶¶ 32-34.) Further, the requisite intent must often be inferred from the circumstances. *Global Maschinen GmbH v. Global Banking Sys.,* 227 U.S.P.Q. 862, 867 (TTAB 1985). Accordingly, in situations like here where there are allegations that " a trademark owner knows that he has not used a trademark in commerce but nonetheless submits an application based on use of the mark in commerce, the Court may infer a fraudulent intent." *Nationstar Mortg.*, 112 U.S.P.Q.2d 1361.

In sum, Defendant's pleading has satisfied Rule 9(b)'s purpose of "afford[ing opposing side] fair notice of plaintiff's claims and the factual ground . . . ." *Farlow v. Peat, Marwick, Mitchell & Co.,* 956 F.2d 982, 987 (10th Cir. 1992).

## F. Defendant plausibly pleads cancellation based on mere descriptiveness

Plaintiff claims that Defendant did not adequately plead its alternative cancellation theory of mere descriptiveness. (Mot. at 10-12.) Defendant met the pleading standard. "In order to be registered, a mark must be capable of distinguishing the applicant's goods from those of others."

*Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992). Marks that are merely

descriptive of a service "do not inherently identify a particular source, and hence cannot be

protected." *Id.* at 769. A "descriptive term" only identifies a characteristic or quality of the

service. *See, e.g. Zatarains, Inc. v. Oak Grove Smokehouse, Inc.*, 698 F.2d 786 (5th Cir. 1983)

(holding "Chick-Fri," which was the name plaintiff used to market the coating mix for chicken,

was descriptive and ordered cancellation).

      The marks "Bold IP" and "Bold Intellectual Property" merely describe intellectual

property legal services. (Counterclaim ¶¶ 35-37.) Tacking "bold" onto the front of "IP" does not

change the descriptive nature of the mark when intellectual property matters by their very nature

are bold and cutting edge. To show that it is common place to describe IP legal services as bold,

the counterclaim notes that even Plaintiff's website advises "Protect Your **Bold** Idea!" (*Id.* at ¶

36.) Plaintiff disputes that this type of evidence shows descriptiveness. But this type of factual

dispute is resolved by the trier of fact, not by a motion to dismiss.

      The one circumstance where a descriptive mark receives protection is where it has

acquired a public distinctiveness as to its source. This distinctiveness is called "secondary

meaning." To establish secondary meaning, the owner of the mark must show that "in the minds

of the public, the primary significance of a product feature or term is to identify the source of the

product rather than the product itself." *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 851

n. 11 (1982). Plaintiff claims that Defendant failed to allege that the lack of secondary meaning

exception does not apply. (Mot. at 12.)

      Plaintiff's argument that Defendant has to show the absence of secondary meaning makes

no sense. Plaintiff—not Defendant—has the burden to prove secondary meaning. "The burden of

proof to establish secondary meaning rests at all times with the plaintiff[.]" *Harrell v. St. John*, 792 F. Supp. 2d 933, 945 (S.D. Miss. 2011). "[T]his burden is not an easy one to satisfy, for [a] high degree of proof is necessary to establish secondary meaning for a descriptive term." *Id.* at 945. As Plaintiff must show secondary meaning, Defendant has no burden to plausibly plead the absence of secondary meaning.

Defendant also expressly alleges that the marks are "without secondary meaning." (Counterclaim ¶ 37.) Defendant has no obligation to make any further allegations regarding secondary meaning.

## G. Defendant properly filed only one counterclaim that includes declaratory judgment relief

Plaintiff incorrectly claims that this Court is not authorized to issue declaratory relief regarding its marks. (Mot. at 12-13.) Defendant's final request for relief includes that if the mark "Bold Intellectual Property" is not cancelled, the Court should "declare that . . . Plaintiff has no rights in the word 'Bold' apart from the mark as shown in Reg. No. 5248702." (Counterclaim ¶¶ 37-38.) The Lanham Act empowers federal courts to "determine the right to registration, order the cancelation of registrations, in whole or in part . . . ." 15 U.S.C.A. § 1119. "Courts have concurrent power" with the USPTO "to conduct trademark cancellation proceedings." *Advance Stores Co. v. Refinishing Specialties, Inc.*, 948 F. Supp. 643 (W.D. Ky. 1996). Indeed, the statutory authority to issue "[d]ecrees and orders [that] shall be certified by the court to the Director [of the USPTO]" is the definition of declaratory relief. 15 U.S.C.A. § 1119. Countless authorities recognize this Court's authority to issue the declaratory relief that Defendant seeks. *See, e.g., Phi Delta Theta Fraternity v. J. A. Buchroeder & Co.*, 251 F. Supp. 968, 149 (W.D.

Mo. 1966) (holding the court has the power to issue a decree cancelling the mark). Further, issuing such declaratory relief is precisely how a trademark is modified. 15 U.S.C.A. § 1119.

### H. Any dismissal should be without prejudice

Plaintiff claims that the Court should dismiss with prejudice. (Mot. at 13.) Dismissal with prejudice is only appropriate where amendment would be futile. *Grossman v. Novell, Inc.,* 120 F.3d 1112, 1126 (10th Cir. 1997). Defendant has demonstrated that each of its grounds supporting its counterclaim are cognizable. The body of allegations Defendant included also provide the Court more than enough of a basis to infer that Defendant could plausibly plead its counterclaim if it has not done so. If the Court concludes there is an absence of plausible allegations, the Court should provide Defendant leave to amend.

### Conclusion

The Court should deny Plaintiff's Motion in its entirety.

Respectfully submitted on June 11, 2019.

<div style="margin-left:40%">

*s/ Adam L. Massaro*

Adam L. Massaro
Kris J. Kostolansky, Esq.
Adam L. Massaro, Esq.
LEWIS ROCA ROTHGERBER CHRISTIE LLP
1200 17th Street, Suite 3000
Denver, CO 80202
(303) 623-9000
kkosto@lrrc.com
amassaro@lrrc.com
*Attorneys for Defendant Bold Legal LLC*

</div>

### CERTIFICATE OF SERVICE

I hereby certify that on June 11, 2019, true and correct copies of the foregoing were electronically filed via the CM/ECF system and were served on the following:

Steven L. Woodrow
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, CO 80210
Email: swoodrow@woodrowpeluso.com

Michael P. Matesky, II
Mateskey Law PLLC
1001 Fourth Ave., Suite 3200
Seattle, WA 98154
Email: mike@mateskylaw.com

_s/ Adam L. Massaro_
Adam L. Massaro